IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELEN RAPINE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HARRAH'S ATLANTIC CITY | : | NO. 2:04-CV-00590-LDD |

**MEMORANDUM OPINION**

J. Davis                                                                                                          March 21, 2006

Presently before the Court is plaintiff's amended motion for a new trial (Doc. No. 66) and defendant's response thereto (Doc. No. 68). For the following reasons, this Court denies plaintiff's amended motion for a new trial (Doc. No. 66).

**I.      Factual and Procedural History**

On December 7, 2005, this Court conducted a two-day trial on plaintiff Helen Rapine's ("plaintiff") claim of negligence against defendant Harrah's Atlantic City ("defendant"). Plaintiff's theory of liability was that defendant failed to protect plaintiff, a business invitee, from a dangerous condition about which defendant knew or should have known.

At trial, plaintiff testified that she suffered physical injuries when she fell off of a bench seat (the "bench") in the elevator lobby of defendant's hotel. (See December 7, 2005 Transcript ("Tr."), at 92-94). Plaintiff's liability expert, Dr. Widas, testified that the bench was 57 inches in length, with a 7 and ½ inch radius slope at its ends. (See December 8, 2005 Tr., at 47-62). Dr. Widas further testified that the slope of the bench was not visible nor delineated, that it lacked arm rests, sides, and a back, and that defendant did warn patrons of the bench's contours. (Id.).

1

Dr. Widas concluded that the location, structure, and presentation of the bench not only posed an unmitigated danger to patrons, but also was the reason that plaintiff fell and suffered injuries. (Id., at 55, 60-61).

The presentation of evidence concluded on December 8, 2005.[1]  Less than two hours later, the jury returned a verdict for defendant, finding that defendant was not negligent in maintaining the bench on its premises.  (See December 8, 2005 Tr., at 216; Verdict Sheet, Doc. No. 62).  On December 16, 2005, plaintiff filed a motion for a new trial (Doc. No.  63), which was later amended on January 19, 2006.  (Doc. No. 66).   Defendant filed a response on February 9, 2006.  (Doc. No. 68).

**II.    Discussion**

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, a court may grant a motion for a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a).  A court has the clear authority to order a new trial where, *inter alia*, the verdict was against the weight of the evidence, the size of the verdict was too large or too small, new evidence has been discovered, the judge, jury, or an attorney engaged in misconduct, or a prejudicial error of law was made. See 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2805, at 38 (1973).  No error is justification for granting a new trial unless the error is more than harmless, "unless refusal to take such action appears to the court inconsistent with substantial justice." Fed. R. Civ. P. 61.

---

[1] Defendant presented one witness, John Witmer, defendant's former project director and current director for design and construction.  (See December 8, 2005 Tr., at 125-142).

Plaintiff presents five justifications for granting a new trial.  First, plaintiff argues that the Court erred by precluding plaintiff from introducing evidence that the bench was dangerous to all senior citizens and that defendant solicited senior citizens to its premises.  (See Pl. Am. Br., at 5-7).  Second, plaintiff argues that the Court erred by submitting question number #1 of the verdict sheet.  (Id., at 8-9).  Third, plaintiff argues that the Court erred by permitting the jury to inspect the bench without supervision and that this inspection led to jury misconduct in the form of unsanctioned experimentations.  (Id., at 9-11).  Fourth, plaintiff contends that the Court, in response to a written jury question, erroneously recited its jury instruction on the duty owed to business invitees.  (Id., at 11).  Fifth, plaintiff claims that the verdict was against the great weight of the evidence. (Id., at 11-14).

### A.    Evidence Concerning Senior Citizens

Plaintiff contends that this Court erred by precluding plaintiff from introducing evidence that defendant would solicit and invite senior citizens to its premises and that the bench at issue is hazardous to senior citizens, including plaintiff.  (See Pl. Br., at 5).

This Court rejects plaintiff's argument.[2]  First, plaintiff fails to provide any citations to the trial transcript to support her conclusion that the Court granted a motion *in limine* precluding plaintiff from introducing evidence that defendant solicits senior citizens to its premises and that the bench was hazardous to senior citizens.  See Loc. R. Civ. P. 7.1(c) (requiring party submitting brief to provide "concise statement of the legal contentions and authorities relied

---

[2]Plaintiff also suggests that defendant's motion was untimely.  However, both parties inappropriately raised issues forming the basis for motions *in limine* immediately before jury selection, in violation of the Court's November 3, 2005 Order and the Court's written protocol. (See December 7, 2005 Tr., at 44).  The Court chose to rule on both parties' motions, rather than denying them in their entirety.

upon in support of the motion"); Disalvio v. Lower Merion School District, 2002 WL 1335140, at *1 (E.D. Pa. June 17, 2002) (finding that Rule 59 motion challenging preclusion of evidence must be factually and legally specific, rather than filled with general conclusions).[3]  Second, the Court's independent review of the transcript fails to disclose such rulings.  Instead, the transcript reveals that defendant specifically objected to the introduction of two exhibits,[4] solicitations to plaintiff to visit defendant's casino, on the ground of relevance; and that the Court ultimately permitted the introduction of these exhibits into evidence for the purpose of showing plaintiff's status as a business invitee, but not for the purpose of supporting a broader theory of liability suggesting that defendant's premises are unsafe for *all* senior citizens.  (See December 7, 2005 Tr., at 33-38, 51-52, 87-90; December 8, 2005 Tr., at 123).[5]  In other words, the Court's ruling did not preclude plaintiff from introducing evidence that defendant actively solicited plaintiff to visit its premises and that the bench was unsafe for *this* particular plaintiff, as a senior citizen.  Finally, to the extent that plaintiff argues that it should have been entitled to introduce the two

---

[3]The Court notes that plaintiff failed to technically comply with Rule 7.1(e) of the Local Rules of Civil Procedure, which requires a party either to order a transcript within fourteen days after filing a post-trial motion or to file a verified motion showing good cause to be excused from this requirement.  See Loc. R. Civ. P. 7.1(e).  Indeed, plaintiff did not order a copy of the transcript until January 9, 2006, twenty-four days after the date of the filing of the original motion for a new trial, on December 16, 2005.  Id. (court may dismiss motion for lack of prosecution if party fails to order transcript within 14 days after filing of motion or file verification).  Nonetheless, because plaintiff ultimately ordered the transcript of the jury trial, and because the Court is now in possession of this transcript, the Court will reach the merits of plaintiff's arguments in its amended motion.

[4]These exhibits were marked as P1 and P2 during trial.

[5]It is clear that despite the Court's ruling, plaintiff's opening statement informed the jury that they would hear evidence regarding defendant's failure to provide a safe environment for "senior citizens" in general, particularly those that defendant allegedly solicits.  (See December 7, 2005 Tr., at 66-67).

exhibits for the purpose of presenting a legal theory that defendant's premises are unsafe for *all* senior citizens, the Court finds no error in its previous ruling, again concluding that such a broad and generalized theory is irrelevant to the particular facts of the case, unduly prejudicial to defendant, and unsupported by plaintiff's evidentiary proofs.[6] See Fed. R. Evid. 401 (court must exclude irrelevant evidence); Fed. R. Evid. 403 (relevant evidence may be excluded if probative value substantially outweighed by unfair prejudice or jury confusion).

**B.     Verdict Sheet**

Plaintiff argues that question #1 of the verdict sheet deviated from the verdict sheets submitted by the parties and was legally erroneous, misleading, confusing, and ambiguous. (See Pl. Am. Br., at 8-9).

This Court finds that plaintiff has failed to demonstrate prejudicial error on this issue. For instance, plaintiff fails to identify the language in question #1 of the verdict sheet that was legally erroneous, misleading, confusing, or ambiguous. Nor does plaintiff identify what language should have been included. Furthermore, it is clear that question #1 ("Has the Plaintiff proven, by a fair preponderance of the evidence, that the Defendant was negligent?") differed in no material way from the parties' proposed question ("Was Harah's negligent?"). (See Jury Verdict Sheet, Doc. No. 62; Pl. Am. Br., at 8). More importantly, plaintiff not only failed to

---

[6]Plaintiff's offer of proof on this issue failed to detail evidence suggesting that defendant employed a marketing strategy targeting all senior citizens, as opposed to just plaintiff. (See December 6, 2005 Tr., at 32-38). Nor did plaintiff offer proof that the bench was unsafe to senior citizens as a distinct class. For instance, Dr. Widas' expert report, plaintiff's lone liability report, concluded that the structure and presentation of the bench presented a dangerous condition to plaintiff and users in general. (See Dr. Widas' May 11, 2005 Expert Report, at 23-25). Dr. Widas' expert report never opined that the bench was unsafe for plaintiff because of her particular age and physical characteristics; or that the bench was unsafe for all senior citizens in particular. (Id.).

5

lodge an objection to question #1 when it was verbally proposed to the jury as part of the jury charge, but also to suggest that question #1 constitutes plain or fundamental error. (See December 8, 2005 Tr., at 190); see Fed. R. Civ. P. 51(d) (party may raise error concerning jury instruction only if party makes timely objection on record to instruction (or failure to give instruction) or if jury instruction constitutes plain error affecting substantial rights of parties); Neely v. Club Med Mgmt. Serv., Inc., 63 F.3d 166, 200 (3d Cir. 1995) ("[W]here a defendant fails to object to the form and language of special verdict forms or to the jury charges, before closing arguments or at the close of charging before the jury retires to deliberations, and the form has been submitted to counsel, objections are waived."); Franklin Prescriptions Inc. v. New York Times Co., 2004 WL 1770296, at *6 (E.D. Pa. 2004) (noting that "Rule 51 applies to verdict sheets as well as jury instructions").

    **C.**    **Unsupervised Examination of Bench**

Plaintiff contends that the Court committed prejudicial error by permitting the jury to inspect the bench without supervision. (See Pl. Am. Br., at 9-11). Specifically, plaintiff argues that this inspection permitted the jury to perform tests and experiments not performed during trial, thereby introducing new evidence into the jury deliberations and prejudicing plaintiff. (Id.).

The decision to permit an exhibit admitted into evidence to reach the jury room is left to the sound discretion of the trial court, absent prejudice to either party. See, e.g., Skaggs v. Hartford Fin. Group, Inc., 2001 WL 1665334, at *13 (E.D. Pa. Sept. 8, 2001); Young v. Lukens Steel Co., 881 F.Supp. 962, 975 (E.D. Pa. 1994). Once an exhibit properly reaches the jury room, the jury may critically examine the exhibit with greater rigor than examinations made during trial. See, e.g., Bankghart v. Origoverken, 49 F.3d 1302, 1307 (8th Cir. 1995) (permitting

jury to subject allegedly defective stove, an exhibit in product liability action, to greater scrutiny in jury room by conducting experiment performed at trial). The jury may also duplicate experiments made during the trial. See, e.g., Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 282 (4th Cir. 1999) ("jury experiments that are merely more critical examinations of exhibits than the examinations made during the trial are not objectionable"). However, experiments that put the jury in possession of evidence not offered at trial constitute jury misconduct requiring a new trial, unless no prejudice results. Id.; McCormick on Evidence § 217 (5th ed. 2003) (noting that jury experiments that are "reruns of in-court experiments" or that constitute closer scrutiny of exhibit are permissible, but, "jury experiments utilizing techniques or equipment substantially different from any employed in court tend to be held error").

This Court finds that it appropriately permitted the jury, upon request, to examine the bench for a brief period of time in the courtroom and that no evidence of jury misconduct exists. For instance, as plaintiff concedes, the bench was an exhibit admitted into evidence and the jury requested to examine the exhibit. (See December 8, 2005 Tr., at 198, 201-203); see Gaskins v. Tarpley, 456 F.2d 1149, 1152 (3d Cir. 1973) (finding no reversible error when relevant exhibits are admitted into evidence and go out to jury during its deliberation); N. J. Ct. R. 1:8-8 (permitting jury to take exhibits introduced into evidence at trial into jury room); 75B Am. Jur. Trial § 1668 (2005) ("A court may in its discretion permit the jury to take to the jury room exhibits in the case which are not writings . . . . The rule is otherwise as to articles not admitted in, or those offered in but excluded from, evidence.").[7] The Court also provided a limiting

---

[7]Plaintiff does not argue that the bench was not an "exhibit" in evidence or that it was inappropriate for the court to permit the jury to observe or view the exhibit during the deliberation process. (See Pl. Am. Br., at 10). Instead, plaintiff argues that it was prejudicial

instruction, expressly instructing the Court's criminal deputy to tell the jury members that they were entitled to inspect the bench, but were not entitled to conduct any "experimentation" or to "reenact" the factual predicate of the accident. (See December 8, 2005 Tr., at 215, 218); see Fiorino v. Sears Roebuck and Co., Inc., 707 A.2d 1053, 1058-1059 (N.J. Super. Ct. App. Div. 1998) (finding under New Jersey law that trial judge can, with proper instructions, permit allegedly defective leaf shredder and blower, along with screwdriver, into jury room so that jury may reenact experiment of testifying witness during jury deliberations); Muchell v. V & V, Inc., 622 A.2d 1365, 1367 (N.J. Super. Ct. 1992) (jury's conducting of experiment on overhead aisle directory exemplar, consistent with legal proofs adduced at trial, during jury deliberation process in personal injury action did not constitute receipt of extraneous evidence triggering new trial); Annotation, Propriety of Juror's Tests or Experiments in Jury Room, 31 ALR 4th 566, at § 2(a) (1984) ("if the acts complained of as tests or experiments amounted merely to an examination and evaluation of such evidence, the courts have generally held that no new evidence was received and no impropriety resulted"). More importantly, plaintiff introduces no evidence, such as affidavits from the jurors,[8] that the jury experimented with the bench in an appropriate manner and that this experimentation, to the extent it occurred, prejudiced plaintiff in a harmful way. See, e.g., Banghart, 49 F.3d at 1306 (considering paralegal's affidavit detailing post-verdict discussions with jurors in determining whether jury performed improper experimentation during

---

error to permit the jury to examine the exhibit during jury deliberations without supervision. (Id.).

[8]Pursuant to Rule 606(b) of the Federal Rules of Evidence, jurors may testify about whether "extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any error." Fed. R. Evid. 606(b).

deliberation); Simon v. Kuhlman, 549 F.Supp. 1202, 1207 (S.D.N.Y. 1982) (denying motion for new trial because no showing that habeas petitioner was prejudiced by jury's conducting of experiment during deliberations to determine possibility of identifying defendant's facial features through stocking mask, particularly because experiment took place in presence of all jurors). Finally, the Court finds no error in its decision not to place a supervisor in the courtroom during the inspection process, as the presence of a court-affiliated supervisor carried the potential to influence the jury in an improper manner and to disrupt the privacy, secrecy, and confidentiality of the jury deliberation process.  See United States v. Olano, 507 U.S. 725, 737 (U.S. 1993) (acknowledging "cardinal principal that the deliberations of the jury shall remain private and secret") (internal citations omitted); United States v. Doherty, 675 F. Supp. 719, 722 (D. Mass. 1987) ("It is beyond peradventure that the actual deliberations of a jury are private and confidential and not subject to public access"); State v. Jenkins, 861 A.2d 827, 841 (N.J. 2004) ("We cannot overemphasize the importance of maintaining the secrecy of jury deliberations for the purpose of encouraging free and vigorous discourse in the jury room.").

      **D.**    **Recitation of Jury Instruction Pertaining to Business Invitees**

Plaintiff argues that the Court's oral recitation of the portion of the jury instruction pertaining to business invitees, in response to a written jury question, was prejudicial and legally erroneous.  (See Pl. Br., at 11).

This Court rejects plaintiff's argument.   Initially, the Court notes that it never "re-read" any portion of the written jury charge in open court following the commencement of jury deliberations; instead, upon the jury's request, the Court submitted to the jury the entirety of the documentation forming the basis for the Court's oral jury instruction, which included a section

detailing the duty of business owners to business invitees.[9]  Moreover, plaintiff fails to identify how the language of the written charge submitted to the jury differed from the oral jury instruction, the adequacy of which plaintiff does not challenge.  (See December 8, 2005 Tr., at 179-180, 189).  Nor does plaintiff provide any case law in support of her position.  In fact, plaintiff fails to provide any legal or factual analysis into the erroneousness of the written instruction pertaining to the law of business invitees, and, instead, relies upon bald, unsupported conclusions that fail both to meet plaintiff's burden of proof and to comply with Local Rule of Civil Procedure 7.1(c).  See Local R. Civ. P. 7.1(c) (requiring moving party to submit a brief that contains factual and legal analysis); Moore v. Vangelo, 2004 WL 292482, at *6 (E.D. Pa.  Feb. 12, 2004) (denying motion for failure to comply with Rule 7.1(c)'s requirement that moving party identify factual or legal basis for contentions); Purcell v. Universal Bank, N.A., 2003 U.S. Dist. LEXIS 547, at *7-8 (E.D. Pa. Jan. 3, 2003) (denying motion because moving party's brief is "purely conclusory" and "wholly inadequate" in violation of Rule 7.1(c)).  Finally, the Court notes that plaintiff has failed to demonstrate that the allegedly erroneous written charge submitted to the jury was harmful or prejudicial to plaintiff.  See Evans v. Fed. Reserve Bank of Philadelphia, 2005 WL 774947, at *4 (E.D. Pa. Apr. 4, 2005) (noting that "error in jury instructions warrants a new trial only if the court is persuaded, based upon the record as a whole, that the error was prejudicial; if the charging error would not have changed the trial result, a new trial cannot be granted") (internal citations omitted).

---

[9]The Court submitted to the jury both the Court's original written charge and plaintiff's supplemental written charge pertaining to the duty of business owners to business invitees. Plaintiff's supplemental written charge formed part of the oral jury instruction; it was read to the jury after the Court read its original written charge. (See December 8, 2005 Tr., at 189).

     **E.**    **Verdict**

A court should order a new trial when the verdict is contrary to the "great weight of the evidence." Roebuck v. Drexel Univ., 852 F.2d 715, 736 (3d Cir.1988). A verdict is against the great weight of the evidence "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991). In making this determination, a court is permitted to consider the credibility of witnesses and to weigh the evidence. See, e.g., Hayes v. Cha, 338 F. Supp. 2d 470, 498 (D.N.J. 2004); Blakey v. Cont'l Airlines Inc., 992 F. Supp. 731, 734 (D.N.J. 1998). However, in performing this analysis, a trial court may not usurp the prime function of the jury, and thereby denigrate the jury system, by substituting its own judgment for that of the jury simply because the court might have reached a different conclusion. See, e.g., Moyer v. Southeastern Pa. Transp. Auth., 1991 WL 111092, at *2 (E.D. Pa. June 17, 1991); Grace v. Mauser-Werke Gmbh, 700 F. Supp. 1383, 1387 (E.D. Pa. 1988).

This Court finds that the jury's verdict in favor of defendant was not against the great weight of the evidence; nor did it result in a miscarriage of justice of shock the conscience. Specifically, the Court finds that a reasonable jury, upon weighing the testimony of plaintiff, plaintiff's expert, and defendant's project director, and upon inspecting the bench at issue, clearly could have concluded that the bench did not present a dangerous condition to business invitees, such as plaintiff, and that defendant was not negligent in using and maintaining this bench in its elevator lobby. See, e.g., Williamson, 926 F.2d at 1352 ("Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom

to scrutinize the jury's verdict than in a case that deals with complex factual determinations"). Although plaintiff argues that the testimony of Dr. Widas, plaintiff's lone liability expert, highlights the fundamental unfairness of the jury's verdict and the necessity of granting a new trial, the jury was free to reject this testimony in reaching its conclusions. Id. at 1353 (reversing district court decision granting Rule 59 motion for new trial because district court substituted its credibility determinations for those of jury); Consumers Power Co. v. Curtiss-Wright Corp., 780 F.2d 1093, 1097 (3d Cir. 1986) ("dispute over credibility will not justify a new trial"). Accordingly, because the jury's verdict is supported by substantial evidence in the record, the Court denies plaintiff's motion for a new trial based upon the ostensible erroneousness of this verdict.

### III. Conclusion

For the preceding reasons, this Court denies plaintiff's Rule 59 motion for a new trial. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELEN RAPINE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HARRAH'S ATLANTIC CITY | : | NO. 2:04-CV-00590-LDD |

**ORDER**

AND NOW, this 21st day of March 2006, upon consideration of plaintiff's amended motion for a new trial (Doc. No. 66), and defendant's response thereto (Doc. No. 68), it is hereby ORDERED that plaintiff's amended motion (Doc. No. 66) is DENIED.

BY THE COURT:

/S/LEGROME D. DAVIS
Legrome D. Davis, J.